## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**GENE GRUBB, JR.,**

                **Plaintiff,**            **CIVIL ACTION NO. 10-cv-11064**

     **vs.**

                               **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

                **Defendant.**

_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket nos. 7) be DENIED, Defendant's Motion For Summary Judgment (docket no. 9) be GRANTED and the instant Complaint dismissed.

                                          ***

**II.**    **PROCEDURAL HISTORY:**

        Plaintiff filed an application for disability and Disability Insurance Benefits with a protective filing date of February 27, 2007 alleging that he had been disabled since June 15, 2006 due to a torn meniscus which was repaired, knee replacement, right leg impairment and pain and a prospective left knee replacement. (TR 14, 76-79, 138-39, 151). The Social Security Administration denied benefits. (TR 50-53). Administrative Law Judge Laura Speck Havens (ALJ) held a de novo video hearing on August 13, 2008 and subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability within the meaning of the Social Security Act at any time from June 15, 2006 through the date of the ALJ's

December 1, 2008 decision. (TR 14-25). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III.   TESTIMONY AND RECORD EVIDENCE

Plaintiff was 48 years old on the date of the hearing. (TR 29). Plaintiff has a high school education and past work in automotive assembly. (TR 29, 141). Plaintiff reported that he initially injured his leg in September 2005 and became unable to work on June 15, 2006 when he had his first knee surgery. (TR 30, 151). The record shows that Plaintiff underwent a right knee arthroscopy in June 2006 with orthopaedic specialist Henri M. Pierre-Jacques, M.D., which revealed a degenerative posterior horn medial meniscal tear and medial compartment osteoarthritis. (TR 314). Dr. Pierre-Jacques performed a total right knee replacement on December 6, 2006. (TR 309-11).

Plaintiff testified that he has aching pain in both knees, his calves, hips, lower back, neck, left thumb and parts of his right shoulder. (TR 35). He rates his pain at a five or six with medication on a scale of ten. (TR 35). Plaintiff reported that he cannot work because he cannot stand more than thirty minutes without swelling and aching in his right leg, he cannot bend the leg into a sitting position, he has constant pain for which he must elevate and ice the leg and take pain medication and he cannot stay in one position for any length of time. (TR 34, 151). At the hearing Plaintiff testified that he can only sit, walk or stand for up to twenty-five minutes before his legs get stiff and his calves and knees swell. (TR 34-35, 38). Plaintiff reported that he cannot sleep for more than three to four hours at a time. (TR 31, 36, 161). He reported that he cannot do any activities that put pressure on his knee. (TR 165). Plaintiff uses a cane to ambulate. (TR 165-66). Plaintiff elevates his legs throughout the day to reduce the swelling in his knees and calves and relieve pain. (TR 37).

Plaintiff takes Percocet for his pain and he reported side effects of drowsiness, sluggishness and occasional upset stomach. (TR 157).

The record shows that in February 2005 Plaintiff was diagnosed by Leo D. Ottoni, M.D., with left thumb carpometacarpal degenerative joint disease and right shoulder impingement. (TR 331). On April 25, 2008 Dr. Ottoni performed left thumb carpometacarpal joint ligament reconstruction with tendon interposition arthroplasty. (TR 372-73). Plaintiff testified that as a result, he cannot pinch or grab weight with that thumb and is restricted to five pounds with the left thumb. (TR 35).      Plaintiff reported that he does not need reminders or assistance with personal care needs, grooming or taking medication. (TR 31, 162). He can prepare food taking five to ten minutes and is able to perform some household chores including loading the dishwasher, doing laundry, light dusting, taking the garbage out and cleaning the cat litter box. (TR 32, 162). He reportedly drives, but no longer than forty-five minutes to a given destination; at the hearing he testified that he drives for under a half-hour. (TR 34, 163). He shops up to twice per week for approximately half-hour per store for groceries and household necessities. (TR 163).

Plaintiff reported that he is able to handle money and accounts, pay bills and use a checkbook or money orders. (TR 163). Plaintiff watches television and uses the computer. (TR 33, 164). Plaintiff attends physical therapy and doctors' appointments. (TR 164). Plaintiff reported that he can pay attention "most of the time," has no difficulty following written or spoken instructions, is able to get along with authority figures, and handles stress and changes in routine "fairly well." (TR 165-66)[1].

_____

[1]The Function Report and Work History Report dated March 16, 2007 appear in duplicate in the record. (TR 160-75, 176-91).

3

The Vocational Expert (VE) testified that Plaintiff's past work as a motor vehicle assembler and molder would be classified as medium exertion in the Dictionary of Occupational Titles (DOT). (TR 42). The ALJ asked the VE to consider an individual of Plaintiff's age, education and past relevant work, limited to lifting and/or carrying ten pounds occasionally and five pounds frequently, able to sit six hours, stand two hours and walk two hours out of an eight-hour day, requiring a sit/stand option, able to only occasionally climb stairs, stoop, kneel, crouch and crawl and who can never climb ladders. (TR 43-44). The VE testified that such an individual could not perform Plaintiff's past relevant work. (TR 44). Such an individual could perform jobs such as information clerk (237.367-046, sedentary with 3,300 jobs in the state of Michigan), garage attendant (915.473-010, light with 3,000 jobs in the state) and cashier (211.462-010, light and reduced to 3,000 jobs due to the sit/stand option from the full range of 32,000 jobs in the state). The VE based her deviation from the Dictionary of Occupational Titles for the sit/stand option on observations of the jobs in question and experience placing people in those jobs. (TR 45).

The VE testified that if the individual needed to elevate his legs to hip level or higher the jobs would be precluded. (TR 45). The VE also testified that missing more than one or two days per month or taking unscheduled breaks to lay down would preclude work. (TR 45).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff meets the insured status requirements through December 31, 2010, had not engaged in substantial gainful activity since June 15, 2006, the alleged onset date, and suffers from degenerative joint disease of the left thumb, status post ligament reconstruction and degenerative joint disease of the knees and right shoulder, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 16). The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of

sedentary exertion work.  (TR 17).  The ALJ found that Plaintiff is not able to perform his past relevant work yet he is able to perform a significant number of jobs in the economy and therefore he is not suffering from a disability under the Social Security Act.  (TR 23-25).

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

5

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(g). The Plaintiff argues a litany of errors by the ALJ, some arguments developed more so than others. Plaintiff has exceeded the twenty-page briefing limit and has failed to break down his issues and related arguments with any subheadings within the "Argument" section. E.D. Mich. LR 7.1(d). The Court will, therefore, address those issues set forth in Plaintiff's statement of issues at the top of his brief and supported by argument.

In his statement of issues, Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence, the ALJ did not properly evaluate the impact of Plaintiff's medical conditions on his ability to perform substantial gainful activity, the ALJ did not properly weigh the opinions and RFC assessments set forth by the treating medical sources, the ALJ did not properly weigh the opinion of the consultative medical examiner, the RFC for a limited range of light work is not supported by substantial evidence, the hypothetical question to the VE was not "based on substantial evidence," and the appeals council did not consider the allegedly "new and material evidence" which Plaintiff provided and finally, the ALJ's decision was not based upon substantial evidence. In the beginning of the Argument section, Plaintiff also alleges that it was error for the ALJ to order a consultative exam and that the ALJ failed to consider certain alleged impairments.

### B.    Discussion and Analysis:

### 1.    The ALJ Did Not Err In Ordering A Consultative Evaluation

The ALJ did not err in ordering a consultative orthopedic evaluation despite Plaintiff offering to obtain an RFC from his treating physician. At the hearing and on the record, the ALJ stated that

6

she was seeking a more detailed RFC than those already in the record, giving good reason for

obtaining the consultative evaluation.  (TR 46).  As Defendant points out, Plaintiff's counsel agreed

to the orthopedic evaluation and also agreed to provide the ALJ with a more detailed RFC from

Plaintiff's treating physician.  (TR 46).

> **2.     The ALJ Properly Considered All Of Plaintiff's Impairments At Step Two and Considered Plaintiff's Impairments In Combination**

The ALJ did not err in failing to find that Plaintiff's past bilateral carpal tunnel syndrome

is a severe impairment.  The regulations define a "severe" impairment as "any impairment or

combination of impairments which significantly limits your physical or mental ability to do basic

work activities." 20 C.F.R. § 404.1520(c).  Plaintiff himself testified that he returned to work

following his carpal tunnel release surgery in early 2005, which is confirmed by Dr. Ottoni's

records.  (TR 41, 325, 334-27).  Dr. Ottoni's records following the carpal tunnel release surgeries

show that Plaintiff had slight to no numbness or tingling and had "good grip strength bilaterally."

(TR 325, 327).  Evidence does not show that this impairment significantly or otherwise limited his

ability to perform work activities during the relevant period.

Plaintiff's argument that the ALJ "refused to consider" Plaintiff's bilateral total knee

replacement, post status left thumb carpometacarpal joint ligament reconstruction and tendon

interposition arthroplasty, total right shoulder replacement and "cervical degenerative disc disease

with radiculopathy on the right" is without merit.  The ALJ identified Plaintiff's severe impairments

related to the left thumb, degenerative joint disease of the knees and right shoulder and addressed

in the RFC those resulting limitations supported by the record.  (TR 16, 17).  Despite Plaintiff's

reference to cervical degenerative disease with radiculopathy, Plaintiff has not alleged any specific

limitations, diagnosis or other record evidence related to this which the ALJ failed to consider.  The

ALJ's findings at steps two and three of the sequential evaluation are supported by substantial evidence. The ALJ's decision shows that she properly considered Plaintiff's impairments and the impairments in combination to determine whether they meet a listed impairment. (TR 16).

### 3. Whether The ALJ's Credibility Determination Is Supported By Substantial Evidence

Plaintiff argues that the ALJ erred in finding that Plaintiff's complaints of swelling in his right knee are inconsistent with physical therapy visits. (Docket no. 7 p.18). Plaintiff also argues that the ALJ erred in finding that Plaintiff "appears to embellish his symptoms and limitations" and erred in discounting Plaintiff's complaints of pain. (Docket no. 7 pp.19-21). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *See id.*

An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to objective medical evidence, the ALJ must consider all the evidence

of record in making his credibility determination.   *See* 20 C.F.R. § 404.1529(c)(2), (3); *see also*

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

The ALJ specifically addressed Plaintiff's allegation that he had swelling in his right knee.

The issue is relevant because the VE testified that the need to elevate a leg to hip level or higher

would preclude work.   The ALJ considered the objective evidence of record and noted where it was

and was not consistent with the alleged severity of Plaintiff's complaints and symptoms.   As the ALJ

correctly stated, there is no mention made in the treatment records that Plaintiff needs to elevate his

legs.  (TR 22).  Dr. Pierre-Jacques testified that Plaintiff may be able to perform a sitting job.  (TR

265).  Plaintiff's right knee flexion increased following a January 2007 surgical knee manipulation.

(TR 254, 257, 287).

Plaintiff argues that the ALJ did not "note the plethora of medical documentation from Dr.

Pierre-Jacques noting swelling on physical examinations," yet fails to cite to a single record to

support the assertion, either in the analysis or background of his brief.  (Docket no. 7 p. 18).

Swelling of the knees was rarely noted by any of Plaintiff's treatment providers, even when

tenderness was present.  (TR 254, 262, 264, 265, 370, 377).  Plaintiff directs the Court to only one

specific observation of swelling, which was at the October 17, 2008 consultative examination where

Dr. J. L. Tofaute, M.D., noted Plaintiff's right knee was warmer and appeared "slightly swollen

compared to the left," however, there was no effusion.  (TR 448).   The Court notes that in June

2007 Dr. Pierre-Jacques reported that Plaintiff had been doing well until he hyperflexed his right

knee.  The doctor noted Plaintiff's report of "pain and swelling within the knee," yet also noted that

both symptoms were improving.  (TR 355).

Instability in the knees was absent on examinations.  (TR 246, 254, 262, 264, 265, 370).

Plaintiff's pain levels as recorded throughout the record were most often five or lower on a ten-scale.

For example, in September 2006 Plaintiff reported a pain level at five of ten. (TR 265). In April 2007 Plaintiff's reported pain was at a level three of a ten-scale. (TR 357). By June 2007 Dr. Pierre-Jacques reported Plaintiff's reported pain at a two of a ten-scale with flexion. (TR 353). In April 2008 Plaintiff's reported pain in the right knee was at a three of ten and the left knee pain was reportedly at a ten of ten, for which Plaintiff underwent injection in the left knee. (TR 370).

Beyond the objective medical evidence, the ALJ is directed to consider Plaintiff's activities of daily living, among other factors, in considering the severity of Plaintiff's pain and the ALJ did so. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Contrary to Plaintiff's argument, the ALJ's characterization of Plaintiff's activities is supported by the record. Plaintiff had no limitations in personal care or hygiene and he engaged in household chores such as loading the dishwasher, some laundry, light dusting and running the lawn sprinklers. (TR 32-34, 162-63). He shops approximately twice a week for up to a half-hour each time for groceries and household necessities, he drives, takes out the garbage and cleans the cat litter box. (TR 32-34, 162-63).

The ALJ considered Plaintiff's treatment and medication, noting that the record did not show medication adjustments to manage pain. The record shows that medication and treatment reduced Plaintiff's pain. In November 2006 Plaintiff reported that cortisone injections help his pain symptoms in his right shoulder and left thumb. (TR 261, 272-73). In June and December 2006 and January 2007 Plaintiff's treatment provider noted that Plaintiff's pain was controlled with medication and he was healing well. (TR 256, 258, 268). In December 2006 it was noted that Plaintiff reported that Tylenol #4 was not effective, in February 2007 Plaintiff's Percocet was renewed and he was on an "aggressive physical therapy program" and Plaintiff continued on Percocet and/or Vicodin throughout the relevant time period. (TR 255, 274-75, 280-82, 355). In April 2008 Plaintiff was prescribed Ultram. (TR 370).

10

The ALJ also considered precipitating and aggravating factors for Plaintiff's need to elevate his legs. The ALJ considered Plaintiff's consistent allegations that his knees swell with activity. (TR 21). The ALJ found this inconsistent with evidence of the physical therapist. In a Discharge Summary following thirty-four physical therapy sessions from January 12, 2007 through April 2, 2007, the physical therapist reported that "patient does report increased swelling with certain activities; however, it has not been noted during his therapy sessions." (TR 360-61). The therapist also noted that Plaintiff reported "over 100% improvement in his knee since initiation of therapy post surgically." (TR 360). The therapist reported on discharge that Plaintiff had lack of full knee extension and limited flexion to 95 degrees, continued to complain of stiffness and pain in the left knee, and had "limited functional gait activities secondary to stiffness, gait abnormality and pain." (TR 361). He could however, "hold balance unilaterally on his left knee replacement," walk steps reciprocally, "sit normally in a chair with his foot dangling below his knee" and "rise and sit into/out of a chair with minimal effort."[2] (TR 361).

In considering Plaintiff's credibility the ALJ also relied on a September 2006 report of a physical therapist noting Plaintiff's report that he works out at a gym but not with his lower extremity, and that Plaintiff "thinks he will need to go on permanent disability." (TR 305). The therapist noted that she observed Plaintiff stepping into his pickup truck by reaching with his right lower extremity. (TR 305). She concluded that Plaintiff's complaints of "pain seem to outweigh objective findings." (TR 305). The ALJ properly explained his credibility determination which is based on a variety of factors and it is supported by substantial evidence in the record.

---

[2]In June 2006 a physical therapist notified Plaintiff's treating physician that numerous attempts were made to schedule appointments with Plaintiff yet the appointments were declined, including on one occasion because Plaintiff was going to be out of town. (TR 298, 300).

11

4.    **Whether the ALJ Properly Considered the Opinions Of Treating Physicians and The Non-Examining Medical Consultant And Whether The RFC Is Supported By Substantial Evidence**

Plaintiff argues that the ALJ failed to adopt the residual functional capacity assessment set forth by Dr. Pierre-Jacques on August 28, 2008, which Plaintiff argues is consistent with the medical documentation of Jason O. Holcomb, M.D., and Dr. Ottoni.  (TR 445-46; Docket no. 7 p. 16-17). Under 20 C.F.R. section 404.1527(d)(2) the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.  Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e).  The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability."  *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).  The ALJ is required, however, to give the reasons for the weight he assigned to the treating physician's opinion.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  To the extent the record contains statements that Plaintiff is "disabled" the ALJ is not required to adopt conclusive opinions that Plaintiff is "disabled" or unable to work.

On August 24, 2007 Dr. Pierre-Jacques opined that Plaintiff should avoid kneeling, squatting, continuous standing and walking and should be restricted to "about 25 pounds of lifting." (TR 110).  On a form dated August 26, 2008 purporting to be signed by Dr. Pierre-Jacques, the doctor indicated that Plaintiff is limited to sitting for two hours, standing for two hours and walking for 1 hour (15 minutes at a time) in an eight-hour day.  (TR 445).  Plaintiff is further limited to

12

occasional bending, occasional lifting five pounds, occasional carrying ten pounds, no pushing or

pulling, limited to two hours of fine finger manipulation in an eight-hour day, requiring a sit/stand

option, no pinching more than five pounds with the left hand, no kneeling and the need to elevate

his legs over his heart as needed.  (TR 445-46).

Despite Plaintiff's argument to the contrary, the ALJ gave reasons for failing to adopt the

severe restrictions set forth by Dr. Pierre-Jacques in August 2008.   The ALJ gave Dr. Pierre-

Jacques's August 24, 2007 opinion more weight than his August 26, 2008 opinion.  The ALJ gave

reduced weight to the August 2008 opinion because the limitation to two hours of sitting

"completely contradicts the doctor's prior testimony, made while under oath," that Plaintiff may be

able to perform a sitting job.  (TR 22).  The ALJ noted that statements in some of Dr. Pierre-

Jacques's opinions conflict.  (TR 21-22). The ALJ also found the severity of the August 2008

opinion inconsistent with examination notes and other objective evidence.  An ALJ does not err in

"discounting the inconsistent and unsupported portions of" the treating physician's medical source

statement.  *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

On August 7, 2007, approximately eight months after the knee replacement, Dr. Pierre-

Jacques opined that Plaintiff will "remain out of work," the doctor believed Plaintiff "is a candidate

for medical disability" and that Plaintiff "will not be able to return to his regular duties as a factory

line worker."  (TR 353).  The doctor's opinion relates to Plaintiff's ability to perform his prior job.

The doctor reported that Plaintiff's pain had improved and was reportedly a two on a scale of ten.

The doctor reported that Plaintiff used a cane to ambulate, range of motion was from 5 degrees to

95 degrees of flexion and no instability was noted.  (TR 353).  On August 24, 2007 Dr. Pierre-

Jacques testified that Plaintiff had "made significant progress" since his knee surgery, he had

improved range of motion and improvement in pain.  (TR 109).  The doctor did not believe Plaintiff

13

could return to job as a factory line worker because being on his feet "for any significant amount of time, let's say, more than two hours in a day" would be too much for his knee. (TR 110). Dr. Pierre-Jacques opined that Plaintiff may be able to perform a sedentary job in a "sitting position." (TR 110).

The ALJ noted that just one month before the August 2008 opinion, Dr. Pierre-Jacques had opined that Plaintiff's right knee was "overall" improved, with some residual aches, no instability noted and range of motion from 0 to 90 degrees of flexion, and that Plaintiff was to follow up on a yearly basis with the right knee. (TR 438). The ALJ also examined Plaintiff's activities of daily living and found that the severity of the limitations are "not indicative of disability, as set forth above with respect to the credibility determination. (TR 21).

The ALJ fully explained the weight given to Dr. Pierre-Jacques's opinions and explained where the opinions were not supported by medically accepted clinical and laboratory techniques and were inconsistent with the evidence of record. The ALJ did not err in failing to adopt the August 2008 opinion. The ALJ's findings on these issues are supported by substantial evidence.

The ALJ concluded that Plaintiff has the RFC to perform "light" work further limited to sitting up to six hours and standing or walking up to two hours of an eight-hour day, the need for a sit/stand option, the limitation to occasional stair climbing, stooping, kneeling, crouching and crawling, no climbing ladders or reaching overhead with the right upper extremity and the need to avoid concentrated exposure to heights and moving machinery[3]. (TR 17). The lifting and carrying

---

[3] "Light work involves lifting no more than 20 pounds at time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling or arm or leg controls." 20 C.F.R. § 404.1567(b). In the decision the ALJ classified the RFC as "light," however, she defined it in both the decision and the hypothetical question to the VE by limiting Plaintiff to occasional

limitations set forth by the ALJ are equal to or more restrictive than the RFCs set forth in the evidence of record.

The ALJ's lifting/carrying restriction is more restrictive than the lifting and carrying limitations set forth by state agency evaluator Donald H. Kuiper, M.D., in May 2007. (TR 340-46). The ALJ specifically explained that while she gave this opinion "appropriate weight" as a non-examining opinion, she "out of caution" found a more restrictive RFC and did not find that Plaintiff could lift as much as twenty pounds occasionally and ten pounds frequently or stand and/or walk for up to six hours. (TR 22, 340). The ALJ's lifting restriction is less restrictive that Dr. Pierre-Jacques August 2007 opinion that Plaintiff should not lift more than twenty-five pounds and it is consistent with Dr. Ottoni's April 2008 opinion that Plaintiff should not lift more than ten pounds with the right arm and no overhead reaching with the right arm with a five pound limitation as to the left hand only. (TR 423).

With respect to the walking, standing and sitting restrictions, the ALJ pointed out several opinions in the record which support Plaintiff's ability to perform a seated job rather than his past work, which involved standing for prolonged periods. On September 12, 2006, following Plaintiff's right knee arthroscopy and prior to the knee replacement, Dr. Pierre-Jacques opined that he did "not feel he [Plaintiff] will be able to return to his regular duties as a line worker" and that a "sit-down job will be in his best interest in the long run." (TR 265). On October 12, 2006 medical evaluator Robert D. Travis, M.D., Board Certified, American Board Of Orthopaedic Surgery, opined that he

---

lifting and carrying of up to ten pounds and frequently lifting and carrying up to five pounds, which is consistent with the exertional lifting and carrying restrictions of sedentary work. 20 C.F.R. § 404.1467(a). The Court notes that the ALJ's RFC and the hypothetical question to the VE on which the ALJ relied are consistent in their limitations. (TR 17, 43-44).

did not believe Plaintiff was "capable of doing his previous job" or "a job that requires standing for prolonged periods of time," yet he believed that Plaintiff "would need a sitting job only." (TR 247).

The ALJ properly considered the October 7, 2008 opinion of consultant J.L. Tofaute, M.D., whose standing and walking limitations are less restrictive than the ALJ's RFC. (TR 454). The ALJ's restriction barring Plaintiff from overhead reaching with his right arm is more restrictive than Dr. Tofaute's opinion in this area. (TR 455). The Court does not find Dr. Tofaute's opinions internally inconsistent as Plaintiff alleges and the Court finds that the ALJ assigned proper weight to Dr. Tofaute as a consultative examiner.

The restriction in the RFC to occasional stair climbing, stooping, kneeling, crouching and crawling is supported by Dr. Kuiper's opinion that Plaintiff can occasionally kneel, crouch and crawl. (TR 341). It is, however, less restrictive than Dr. Tofaute's opinion that Plaintiff should not stoop, kneel, crouch or crawl and Dr. Pierre-Jacques's August 2007 opinion that Plaintiff should avoid kneeling and squatting. (TR 110, 456). Defendant correctly argues that none of the specific jobs cited by the VE require climbing, balancing, stooping, kneeling, crouching or crawling. Dictionary of Occupational Titles (4th ed. 1991); 1991 WL 672194 (information clerk); 1991 WL 687865 (parking lot attendant); and 1991 WL 671840 (cashier). While evidence in the record supports the finding that Plaintiff can occasionally perform these postural limitations, any error by failing to bar these postural limitations is therefore harmless.

The ALJ's RFC is supported by substantial evidence in the record.

**5.    Whether the ALJ's Decision At Step Five Was Supported By Substantial Evidence**

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held

that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Comm'r*, 368 F.3d 629, 633 (6th Cir. 2004).   As set forth above, the ALJ's RFC was supported by substantial evidence in the record and included the limitations supported by the record.   The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there are jobs available for a person with these limitations, which the VE cited in detail.   The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform.   The ALJ's decision at step five is based on substantial evidence.

**6.     Whether Additional Medical Records Are New Evidence Requiring Remand Pursuant To Sentence Six of 42 U.S.C. § 405(g)**

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ.  *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Sec'y*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993).  Furthermore, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."

The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401).  The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  This is

17

referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material")(emphasis added)(citations omitted).

Therefore, the Court may not review this evidence except to determine whether the case should be remanded for consideration of the additional evidence. The evidence must be new and material and it must relate to the period on or before the date of the ALJ's hearing decision.

Plaintiff has continued to submit medical records for treatment occurring up to eleven months after the ALJ's decision. Plaintiff argues that he has good cause for failing to submit the evidence at the time of the hearing "because plaintiff had not yet received the treatment outlined in this medical documentation." (Docket no. 7 p. 22).

The Court agrees with Defendant's argument that the following additional evidence is cumulative and therefore not material: Dr. Pierre-Jacques's opinion that Plaintiff cannot return to his previous work (docket no. 483); Dr. Holcomb's permanent restrictions of no overhead work or overhead lifting of more than ten pounds, which is already addressed in the RFC precluding overhead reaching with the right upper extremity (TR 483); and a March 3, 2009 RFC form nearly identical to the August 2008 form from Plaintiff's treating physician(s) and additional restrictions

18

stating that Plaintiff is "permanently" unable to work and post-dating the ALJ's decision by almost one year. (TR 222-23, 469-70, 507-09). Also cumulative is Dr. Pierre-Jacques's March 3, 2009 examination report with the opinion that Plaintiff "will not be able to return to his previous line of duty." (TR 232).

Evidence related to Plaintiff's left knee replacement, and the left knee arthroscopy which took place on November 19, 2008, was considered in the ALJ's decision and the records before the ALJ showed that a left knee replacement was on the horizon. (TR 235). Plaintiff's left knee impairment and resulting limitations during the relevant period were considered and included in the RFC. Despite records showing that Plaintiff was ambulating with a cane following the left knee arthroscopy, the record shows he was ambulating with a cane during the relevant time period. Plaintiff has not identified material or new evidence relating to Plaintiff's knee impairments. (TR 478, 480, 483-85).

The records show that Plaintiff underwent a shoulder surgery in April 2009. Plaintiff's shoulder impairment and resulting restrictions prior to the surgery and for the relevant time period herein were addressed in the RFC precluding overhead reaching with the right upper extremity. By February 4, 2009, more than two months after the date of the ALJ's decision, Plaintiff's treating physician Dr. Holcomb had not recommended more restrictive limitations with regard to the right upper extremity than those set forth in the ALJ's decision. On February 4, 2009 Plaintiff underwent a Marcaine and Kenalog injection in the right glenohumeral joint space and Dr. Holcomb reported that he intended to see Plaintiff again in two months, at which time he would repeat the radiographs, and consider total shoulder arthroplasty if Plaintiff did not have lasting pain relief from the injection. (TR 235-37). Dr. Holcomb reported that he "will continue with work restriction which is a primary restriction limited of (sic) no lifting with the right arm more than 10-pounds." (TR 235).

19

On April 1, 2009 Dr. Holcomb reported that he "anticipated" a restriction to no overhead work and no overhead lifting more than 10 pounds. (TR 230-31). These restrictions by Plaintiff's treating physician, addressing Plaintiff's right shoulder impairment more than two months after the ALJ's decision are not more restrictive than the RFC limiting Plaintiff to lifting no more than ten pounds occasionally with no overhead lifting with the right upper extremity, and include no showing of impairment in raising the left arm overhead. (TR 17). As Defendant points out, with respect to the later records, any recovery period for the May 4, 2009 shoulder surgery is well outside the relevant time period of the ALJ's decision. (TR 481, 230, 235, 481, 482, 483, 510 ).

Dr. Ottoni's February 19, 2009 RFC form is again outside the relevant time period and is consistent with the RFC in restricting overhead lifting with the right arm and lifting no greater than ten pounds. (TR 465-67). Some of the aforementioned records related to Plaintiff's left knee and shoulder, at best, show only a subsequent deterioration or change in condition after the administrative hearing and are "deemed immaterial." *Wyatt*, 974 F.2d at 685 (citing *Sizemore*, 865 F.2d at 712).

There is no evidence that the reports of neck pain noted by Dr. Nadjarian relate to the relevant time period. Plaintiff has not attempted to show that these records relate to the relevant period prior to the ALJ's decision or that they are material. Dr. Nadjarian diagnosed myofascial pain secondary to muscle spasm and degeneration cervical intervertebral disc. (TR 489-95). These records and diagnoses arise almost a full year after the ALJ's decision. (TR 489-503).

Similarly, the following records have been produced by Plaintiff without showing that they are both relevant to the time period prior to the ALJ's decision and material: Gunjan Shah, M.D., gastroenterology, records dated August 14, 2009; Dr. David Margolis records dated November 9,

20

2010; and a record related to the Plaintiff's follow-up on carpal tunnel syndrome post-dating the ALJ's decision by months.  (TR 23334, 475, 479, 496-500).

Plaintiff has not shown the relevance or materiality of February 2009 records from a vocational specialist and case manager who is not a medical treatment provider.  These records post-date the ALJ's decision by more than two months, they are not material and there is no showing that they relate to the relevant time period.  (TR 216-21, 463-68).

Plaintiff argues good cause because the additional medial records are the result of treatment obtained after the ALJ's hearing and decision.  The additional evidence provided to the Appeals Council by Plaintiff, however,  is not material, most of it does not relate to the time period at issue, and the evidence that does relate to the relevant time period is cumulative.  The additional evidence presented by Plaintiff does not require remand.  42 U.S.C. § 405(g).

## VI.    CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'"  *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002).  The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise.  Plaintiff's Motion for Summary Judgment (docket no. 7) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 9) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes

a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 9, 2011          s/ Mona K. Majzoub_____
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 9, 2011          s/ Lisa C. Bartlett____
                                 Case Manager